IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH BRYANT, | ) CASE NO. 1:12 CV 2459 |
| Plaintiff, | ) JUDGE SARA LIOI |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **REPORT & RECOMMENDATION** |
| Defendant. | ) |

## Introduction

Before me by referral[1] is an action under 42 U.S.C. § 405 by plaintiff Elizabeth Bryant for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] Under the terms of my initial order, the Commissioner has answered[3] and filed the transcript of the administrative proceedings,[4] and Bryant has filed her fact sheet.[5] As set forth in my

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Sara Lioi in a non-document order entered on October 2, 2012.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 13.

procedural order,[6] the parties have briefed the merits of their positions[7] and have submitted charts.[8] The parties have also participated in a telephonic oral argument[9] and have submitted supplemental briefs.[10]

For the reasons stated below, I will recommend finding that the decision of the Commissioner is supported by substantial evidence and so should be affirmed.

## Facts

**A.     Background**

Bryant, who was 53 years old at the time of the hearing,[11] told the Administrative Law Judge ("ALJ") that she was unable to work due to a back injury, hip pain, depression, panic attacks, and chronic lung disease.[12] She further stated that she has difficulty sitting or standing for prolonged periods, requires assistance to climb stairs or kneel down, and

---

[6] ECF # 6.

[7] ECF # 15 (Bryant's brief); ECF # 16 (Commissioner's brief).

[8] ECF # 15, Attachment (Bryant's charts); ECF # 16, Attachment (Commissioner's charts).

[9] ECF # 19.

[10] ECF # 20 (Commissioner's supplemental brief); ECF # 23 (Bryant's supplemental brief).

[11] Transcript ("Tr.") at 34.

[12] *Id.* at 18.

sometimes needs to lie in bed all day.[13] She admitted to having a problem with alcohol dependency in the past but stated that she stopped consuming alcohol in 2006.[14]

**B.     Decision of the ALJ**

After hearing testimony from the claimant and her husband, and considering the reports of various treating and consultative medical sources, the ALJ, whose decision became the final decision of the Commissioner, concluded that Bryant's description of her psychological symptoms was "inconsistent and unpersuasive," with her account of pain "so extreme as to appear implausible, given the relatively weak medical evidence."[15] Further, the ALJ concluded that Bryant failed to follow through on treatment recommended to her by her doctors, and worked "only sporadically prior to the alleged disability onset date," so giving rise to a question as to whether Bryant's "continuing unemployment is due to medical impairments."[16] The ALJ also found Bryant was inconsistent and contradictory as to the information she provided concerning her diagnoses and her alcohol use, involvement with the criminal justice system, and education.[17]

The ALJ found that Bryant had severe impairments consisting of thoracic herniated disc, chronic obstructive pulmonary disease, and depressive disorder (not otherwise

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 19.

[16] *Id.*

[17] *Id.* at 19-20.

specified).[18] The ALJ then made the following finding regarding Bryant's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant can never climb ladders, ropes or scaffolds, and can only occasionally climb ramps or stairs. In addition, the claimant can occasionally stoop, kneel, crouch, crawl, or balance. The claimant also needs to avoid concentrated exposure to irritants (such as fumes, odors, dust, gases, and poorly ventilated areas), the use of hazardous machinery, operational control of moving machinery, and unprotected heights. Furthermore, the claimant is relegated to simple, routine and repetitive tasks, in an environment where changes take place no more than occasionally, where production quotas are based on end-of-the-workday measurements, and where no more than occasional interaction is had with coworkers or the general public.[19]

Given that residual functional capacity, the ALJ found Bryant capable of her past relevant work as an assembly worker[20] and, therefore, not under a disability.[21]

Alternatively, based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Bryant could perform.[22]

---

[18] *Id.* at 15.

[19] *Id.* at 17.

[20] *Id.* at 35.

[21] *Id.*

[22] *Id.*

**C.     Issues on judicial review**

*1.     Bryant's position*

Bryant asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Bryant presents seven issues for judicial review:

- FINDING 3, SEVERE IMPAIRMENTS: Did the decision err by overlooking four "severe" impairments documented in the record — lumbar degenerative joint disease, moderate bilateral hip arthritis, obesity, and anxiety disorder — which would have imposed additional restrictions in Finding 5 (RFC)?

- FINDING 5, RESIDUAL FUNCTIONAL CAPACITY: Did the decision err by giving little weight to the opinions of treating neurologist Dr. Baddour, and the reasons stated for the weight given were not good reasons under the Treating Physician Rule?

- FINDING 5, RESIDUAL FUNCTIONAL CAPACITY: Did the decision err by giving the greatest weight to the physical RFC opinions of the State agency's reviewing physicians, without noting that those physicians did not have the later key evidence that showed that the claimant could not perform the standing, walking, or lifting required for the "light" work found in Finding 5?

- CREDIBILITY FINDING (UNDERLYING FINDING 5, RFC): Did the decision err by finding the claimant's statements not credible without noting that the State agency physicians had found the claimant's statements about the functional effects of her symptoms to be "fully credible"?

- FINDING 6, PAST RELEVANT WORK: Did the decision err by finding that claimant could perform past "light" work as an assembly worker, where that finding was based on testimony by a vocational expert who believed, with no support in the record, that claimant had actually performed assembly work, or that her work as a machine operator was light both as she performed it and as it is generally performed?

- UNNUMBERED ALTERNATIVE FINDING THAT CLAIMANT COULD PERFORM OTHER WORK AT STEP FIVE OF THE SEQUENTIAL EVALUATION: Did the decision err by relying on the occupation of STUFFER 731.685-014 as one of the two occupations the claimant could perform, when that occupation is shown in the Dictionary of Occupational Titles as being sedentary, the VE testified that his testimony was consistent with the DOT, the VE testified that the occupation is light, the conflict was not resolved, and sedentary jobs may not be considered because the claimant is deemed disabled on the sedentary "grids" at her age?

- OTHER WORK AT STEP FIVE: Was the opinion of the vocational expert about the incidence of jobs in the one remaining occupation, GARMENT BAGGER 920.687-018, insufficient to carry the Commissioner's burden at step five, where the VE conceded that his testimony about 48,000 jobs in Ohio included jobs that were not in that single occupation, but rather in the larger Census grouping of occupations that may include occupations that are above unskilled or above light?[23]

## 2.   *Commissioner's position*

The Commissioner contends that the medical evidence shows that Bryant's physical impairments are only "modest," with her cardiac function essentially normal, her COPD managed conservatively, and any back problems improving with conservative treatment.[24] Similarly, the Commissioner asserts that the medical evidence also shows that any mental impairments are no more than modest.[25]

The Commissioner further states that the step two findings here were appropriate and that the ALJ properly credited the opinions of state agency physicians over the opinion of

---

[23] ECF # 13 at 2-3.

[24] ECF # 16 at 3-8.

[25] *Id.* at 9-12.

Raymond Baddour, M.D., a treating source.[26] In so doing, the Commissioner notes that the "ALJ's decision in this case is one of the most comprehensive decisions one will encounter in any disability case: the ALJ prepared [a] 26-page opinion in which he devoted some 17 pages to an exhaustive account of the medical evidence in the record."[27]

In addition, the Commissioner maintains that the alternative step five findings are supported by substantial evidence because:

- Bryant would not "grid out" since she was 53 years old, with a GED, transferrable skills, and a history of semi-skilled work; [28]

- the VE here identified three, not two, representative occupations that, with her past relevant work, Bryant could perform;[29] and

- even if there were only one job that Bryant could perform – a garment bagger – that finding would be sufficient to show that jobs exist in significant numbers that Bryant could perform.[30]

## Analysis

### A.    Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[26] *Id.* at 12-18.

[27] *Id.* at 17-18 (citing transcript).

[28] *Id.* at 18-19.

[29] *Id.* at 19.

[30] *Id.* at 19-20.

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[31]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[32] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[33]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

---

[31] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[32] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[33] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

**B.     Application of standard**

*1.     Step two (issues one and four)*

Bryant here claims that the ALJ should have included lumbar degenerative disc disease, moderate bilateral hip osteoarthritis, obesity, and anxiety disorder. But at the oral argument Bryant agreed that the essential issue is whether the RFC contains sufficient restrictions to address all of her limitations, whether identified as severe or otherwise. She contends that her lumbar condition should have resulted in greater postural limitations, mandating a sedentary exertion level, as should the hip and obesity conditions, and the anxiety limitation likewise should have required greater restrictions.

The ALJ found that Bryant was not consistent or credible in relating her symptoms from her recognized impairments, giving descriptions of her pain that were "so extreme as to appear implausible."[34] Judgments as to a claimant's credibility are the province of the ALJ,[35] and the ALJ here has found that Bryant "has exaggerated [her] symptoms and limitations."[36] Thus, to the extent that this initial argument is little more than an attempt to have the reviewing court make a *de novo* assessment of Bryant's various claims of severity as to her limitations, the argument here is unpersuasive.

---

[34] *Id.* at 19.

[35] In articulating reasons for discounting a claimant's credibility, the ALJ must provide enough of an assessment to assure the reviewing court that he or she has considered the relevant evidence and be specific enough to permit the court to trace the path of the ALJ's reasoning. *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). The ALJ's credibility finding is entitled to deference and should not be disturbed absent compelling reasons. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[36] *Id.*

This argument is also closely linked with Bryant's fourth issue – that the ALJ should not have discounted Bryant's claims of pain and the extent of limitations because Dr. Nick Albert, a state agency reviewing physician whose opinion the ALJ determined was entitled to significant weight, found Bryant fully credible.

There is a superficial debater's logic to Bryant's point. But any meaningful difficulty here is illusory. In her brief, Bryant again recites her alleged functional limitations that, according to her, were seen as credible by Dr. Albert:

- "I have to sit and rest after standing for awhile;"

- "I can only lift maybe 10 pounds;"

- She can walk "maybe a block" and then needs to rest for "about 10-20 minutes;" and

- "I have to rest after 10-15 minutes."[37]

As the ALJ summarized Dr. Albert's RFC opinion, Dr. Albert concluded:

> [T]hat the claimant can lift, carry, push and pull up to 20 pounds occasionally and up to 10 pounds frequently (Exhibit 3F). Dr. Albert further opined that the claimant can stand (with normal breaks) for about six hours in an 8-hour workday; can walk (with normal breaks) for about 6 hours in an 8-hour workday; can sit (with normal breaks) for about 6 hours in an 8-hour workday (Exhibit 3F). Dr. Albert indicated that the claimant can frequently stoop, kneel, crouch and crawl. (Exhibit 3F).[38]

---

[37] ECF # 15 at 10 (quoting record).

[38] *Id.*

-10-

Dr. Albert's brief comment that Bryant's "statements about his/her symptoms and their functional effects is found to be fully credible,"[39] has the form of boilerplate language that may not have been carefully edited, with its reference to "his/her symptoms" being an indicator of that. Further, and more importantly, Dr. Albert's own detailed, multiple and relatively non-limiting RFC findings – the findings expressly noted and relied on by the ALJ – are not fully consistent with his general comment which gave full credibility to Bryant's own allegations as to functional limitations. Bryant is here hoping to have the tail wag the dog by making the unspecific, general comment control over the detailed and specific, and by ignoring the ALJ's own distinction as to what portions of Dr. Albert's opinion are to be given significant weight.

In fact, far from being an unqualified endorsement of everything in Dr. Albert's opinion, the ALJ noted that the portion of that opinion being given such weight is that part which is "consistent with the undersigned's credibility determination, and supported by and consistent with the record as a whole."[40] Thus, the portion of Dr. Albert's opinion not consistent with the ALJ's credibility finding concerning Bryant is not entitled to that significant weight.

Claims one and four by Bryant, which go the ALJ's judgment about her credibility, are without merit. The decision of the Commissioner in this regard should be affirmed as supported by substantial evidence.

---

[39] Tr. at 409.

[40] *Id.* at 33.

## *2.  Treatment of the treating source, Dr. Baddour, and of consulting sources (claims two and three).*

These issues concern the lesser weight assigned to the opinion of a treating source and greater weight given to the opinions of state agency physicians and psychologists.

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[41] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[42] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[43] *Blakley v. Commissioner of Social Security*,[44] and *Hensley v. Astrue*.[45]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[46] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[47] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give

---

[41] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[42] *Id.* at 375-76.

[43] *Rogers*, 486 F.3d at 242.

[44] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[45] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[48] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[49]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[50] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[51] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[52] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[53] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[54]

---

[48] *Id.*

[49] *Rogers*, 486 F.3d at 242.

[50] *Gayheart*, 710 F.3d at 376.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[55]

The ALJ here conducted the hearing outside of the Sixth Circuit and gives no indication of being familiar with Sixth Circuit case authority such as *Gayheart*. That said, the decision to accord Dr. Baddour's RFC opinion "little weight" does not strictly follow the *Gayheart* rubric. Nevertheless, the ALJ's decision here was substantially compliant with that teaching.

*Gayheart* requires that there be two distinct analyses, with care taken not to collapse the two into a single issue. In particular, ALJs are instructed to begin by deciding if the treating source opinion should receive controlling weight, asking if the opinion was (1) well-supported by clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence in the record. Here, although it was not structured as the initial inquiry, the ALJ asked these precise foundational questions and made the findings that (1) Dr. Baddour's reports "fail to reveal the type of significant clinical, laboratory, and radiological abnormalities" consistent with disability; and (2) his assessment of Bryant "contrasts sharply with the other evidence of record."[56] The ALJ did not then expressly draw

---

[55] *Id.*

[56] Tr. at 33.

-14-

the conclusion that Dr. Baddour's opinions are not to be given controlling weight but rather implicitly made that finding by giving his opinions "little weight."[57]

The second *Gayheart* inquiry – what weight should be given if controlling weight is not assigned – requires an analysis of factors such as "the length of the treating relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source."[58] Again, while not explicitly conducting this inquiry as a wholly separate analysis, the ALJ here found that Dr. Baddour's opinions were only entitled to little weight because: (1) "the actual treatment visits have been relatively infrequent;"(2) Dr. Baddour's opinion was "conclusory, providing very little explanation of the evidence relied on;" and (3) Dr. Baddour's opinion "contrasts sharply with the other evidence of record."

As such, the decision here closely tracks the areas of inquiry set out in the regulations and emphasized in *Wilson v. Commissioner of Social Security* concerning the second level of analysis for a treating source's opinion. In addition, the ALJ provided a high level of detail concerning Bryant's presenting symptoms, physician diagnoses, and treatments, and Bryant's responses during the period when she was seeing Dr. Baddour.[59] Although it would have been helpful to the reviewing court for the ALJ to have set forth the specifics of these

---

[57] *Id.*

[58] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

[59] Tr. at 27-29.

comparisons within the *Gayheart* weighing analysis itself, the evidence as to how Dr. Baddour's opinion related to the other sources is present in some detail, and that detail permits the reviewing court to conduct a meaningful review of the ALJ's decision.

Accordingly, while not a textbook example of a *Gayheart* analysis, the analysis conducted here substantially complied with *Gayheart* such as would permit the affirmance of the Commissioner's decision. This case does not present the problem with a "collapsed analysis" that troubled *Gayheart* in that the ALJ did not skip over the distinct requirements of each level of inquiry (as was the case in *Gayheart*) but actually addressed the elements of each level of inquiry, if not in sequential order. At root, the ALJ asked and answered every question set forth in *Gayheart* in a manner that permitted meaningful judicial review of his decision to not accord Dr. Baddour's opinion controlling weight but to assign it little weight. The Commissioner's decision in this regard, therefore, is supported by substantial evidence and should be affirmed.

In contrast to the bifurcated weight inquiry into opinions of treating sources, "opinions from nontreating and nonexamiming sources are never assessed for controlling weight,"[60] as in the first step of a *Gayheart* inquiry. Rather, the analysis is the second step of the treating source review – the length of the examining relationship, specialization, consistency, and supportability.[61] That said, however, *Gayheart* also teaches that an ALJ commits reversible

---

[60] *Gayheart*, 710 F.3d at 376.

[61] *Id.*

error by subjecting the opinions of a treating source to closer scrutiny than the opinions of state agency physicians.[62]

Here, there is no argument that the ALJ applied a more lenient standard to the opinions of state agency physicians than he did to any treating source. There is no contention, as there was in *Gayheart*, that inconsistencies were noted in Dr. Baddour's opinion as a reason for assigning less than controlling weight but totally ignored in the opinions of consulting physicians, which received greater weight. Indeed, the example cited earlier of an internal inconsistency in the opinion of Dr. Albert underscores the point that the weight accorded to Dr. Albert's opinion was qualified and limited to only that portion of his opinion otherwise consistent with the ALJ's own credibility determination.

In sum, therefore, the ALJ's treatment of the opinions of Drs. Albert and Baddour, as discussed above, was proper under the controlling authorities, and the decision of the Commissioner in this regard is supported by substantial evidence and should be affirmed.

### 3.     *Past relevant work; the determination of the VE regarding jobs that Bryant could perform (issues 5, 6 and 7).*

Although the ALJ initially determined at step four that Bryant was capable of doing her past relevant work as an assembly worker,[63] the Commissioner at the oral argument conceded that "there is some weakness" in this finding and proceeded only on the alternative step five finding that there were significant jobs on the economy that Bryant could perform.[64]

---

[62] *Id.* at 380.

[63] *Id.* at 33.

[64] *See*, ECF # 24 (oral argument transcript) at 20.

Thus, the final issue is whether Bryant is capable of performing work as a stuffer, which the VE testified was sedentary, unskilled work, with 20,000 jobs available in Ohio and 240,000 jobs nationally.[65] Bryant maintains that due to her age, and the fact that the stuffer position is sedentary work, she would be deemed disabled under the grid rules.[66] The Commissioner, by contrast, argues that because Bryant was found able to do light work, the grid rules associated with that exertional level are the foundation for the vocational analysis in this case, and that because the functional capacity to do light work includes the functional capacity to do sedentary work, the ALJ properly found Bryant not disabled on the testimony of the VE.[67]

The ALJ's decision here is supported by the applicable law and regulations, as well as by substantial evidence. Bryant's position rests on the flawed premise that because the position of stuffer was sedentary, the grid analysis must be done by applying the grid for sedentary work to her, which would produce a finding of disabled.[68] In fact, that grid (201.14) applies to those persons age 50-54 who are exertionally limited to sedentary work – a condition that does not apply to Bryant whose RFC limits her to light work with some additional limitations. As the Commissioner observes, there is no basis for arguing that any

---

[65] Tr. at 35. The actual number of available jobs for the position of garment bagger, which was also referenced by the ALJ, was disputed by Bryant. That issue is not addressed here because resolution of the issue concerning the stuffer job will be sufficient to resolve the matter.

[66] ECF # 15 at 12-13.

[67] ECF # 20.

[68] ECF # 23 at 2.

sedentary job is categorically inappropriate for a person with Bryant's RFC of light work with restrictions.[69] The ultimate issue is whether the ALJ identified a significant number of jobs existing in the economy that Bryant, with her vocational background and RFC, could perform. The VE's testimony that there are 20,000 Ohio jobs as a stuffer is substantial evidence in support of the Commissioner's decision in this regard, and that this decision should be affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Bryant had no disability. Accordingly, I recommend that the decision of the Commissioner denying Bryant disability insurance benefits and supplemental security income be affirmed.

Dated: July 12, 2013               s/ William H. Baughman, Jr.
                                   United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[70]

---

[69] ECF # 20 at 3.

[70] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).